**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

_____
:
JANE DILUIGI TORRES,                          :
:
    Plaintiff,                                     :
:
        v.                                       :
                              : Civil Action No. _____
:
ASSURANT SERVICES COMPANY:
INCORPORATED D/B/A                      :
ASSURANT SOLUTIONS                     :
:
    Defendant.                                  : _Electronically Filed_
                              : JURY TRIAL DEMANDED
_____:

**COMPLAINT FOR**
**DECLARATORY, EQUITABLE, AND MONETARY RELIEF**

Plaintiff, Jane Diluigi Torres (hereinafter "Ms. Torres") claims damages upon a cause of action against the above-captioned Defendant under the Fair Labor Standards Act, "Nursing Mothers' Provision," 29 U.S.C. § 201 _et seq.,_ whereof the following is a statement:

**JURISDICTION**

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, as a case arising under the laws of the United States. Jurisdiction is invoked pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 _et seq._ which

provides for original jurisdiction of Ms. Torres' claims arising under the laws of the United States and over actions to recover damages and to secure equitable and other relief under the appropriate governing statutes.

2.   Therefore, Ms. Torres has exhausted all administrative remedies and has taken all other steps necessary to bring this action before this Court.

## VENUE

3.   Paragraphs 1 through 2 are incorporated herein by reference as though set forth in full.

4.   The actions complained of herein occurred within the jurisdiction of this Court and involve a Defendant who resides within its jurisdictional limits.

5.   Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. § 1391(b) and 1391(c) because one or more defendants can be found in the Middle District of Pennsylvania and events or omissions giving rise to Plaintiff's claims have occurred in the Middle District of Pennsylvania.

## PARTIES

6.   Paragraphs 1 through 5 are incorporated herein by reference as though set forth in full.

7.   Plaintiff, Jane Diluigi Torres (hereinafter "Ms. Torres") is the mother of two children and resides in York Pennsylvania.  At all times relevant, Ms. Torres was an employee of Assurant Solutions and worked in its factory in York

Pennsylvania.  Ms. Torres was a nonexempt "employee" as defined by the Fair Labor Standards Act, was pregnant and breastfeeding an infant during her employment with Assurant Solutions, and engaged in protected activity during her employment with Assurant Solutions until she was terminated from her position on or about July 1, 2014.

8.  Defendant Assurant Services Company Incorporated d/b/a Assurant Solutions (hereinafter "Assurant Solutions") is a worldwide corporation offering insurance and operating factories to repair broken cell phone and mobile devices in several states throughout the United States, including the York Pennsylvania factory located at 625 Willow Springs Lane, York, Pennsylvania 17406.  At all times relevant hereto, Defendant Assurant Solutions is engaged in commerce throughout the United States, employs in excess of 15 employees, is an employer pursuant to the Fair Labor Standards Act, is liable for Plaintiff's damages, and is responsible for the acts of its supervisory employees.

## FACTUAL ALLEGATIONS

9.  Paragraphs 1 through 8 are incorporated herein by reference as though set forth in full.

10.  Plaintiff, Jane Diluigi Torres, was employed with the Defendant Assurant Solutions as an Electro-Mechanical Assembler in its Mobile Device Repair

and Logistics Factory located in York, Pennsylvania, testing broken cell phones to ensure repairs were correctly made.

11.   In late 2013, Ms. Torres, a single mother, became pregnant with her second child.

12.   During her pregnancy Ms. Torres worked as an Electro-Mechanical Assembler with Assurant Solutions in its York, Pennsylvania factory.

13.   On or about September, 2014, Ms. Torres gave birth to her second child, a baby boy.

14.   At the time of giving birth, Ms. Torres was not yet eligible for an FMLA leave of absence to care for her baby.

15.   As such, she returned to work with Assurant Solutions six weeks after giving birth to her baby in October 2014

16.   Prior to her return to work, Ms. Torres informed Assurant Solutions and its supervisory employees that she would be breastfeeding her infant, would be lactating and pumping breast milk for her infant while at work.

### The Benefits of Breastfeeding and the
### "Nursing Mothers" Provision of the Affordable Care Act

17.   For public health concerns, a broad consensus exists among medical and public health experts that infants should be breastfed exclusively for their first six months following birth.

18.  Breastfeeding has proven medical benefits for infants, nutritional benefits, psychological, social, economic, and environmental benefits for women and for children.

19.  With the strong public policy in favor of women breastfeeding children and to increase the rates of breastfeeding, effective March 23, 2010, the Patient Protection and Affordable Care Act ("Affordable Care Act") amended the Fair Labor Standards Act ("FLSA") and added federal protections for nursing employees to have reasonable break time to express breast milk in a place other than a bathroom for up to one year after the child's birth. 29 U.S.C. §207(r)(1)(A) (the "Nursing Mothers' Provision").

20.  After the birth of her baby, Ms. Torres, recognizing the benefits of breastfeeding, committed to feeding her infant breast milk exclusively for the first six months and to continue breastfeeding him thereafter.

21.  Ms. Torres breastfed her baby on demand, that is, when he was hungry.

22.  Typically, she breastfed him every two hours, around the clock.

23.  Breastfeeding women who cannot be with their infants at all times need to express breast milk on roughly the same schedule as the child's nursing schedule so that there is a supply of milk on hand for the baby when the mother is not present to breastfeed.

24. Additionally, expression of milk on a regular schedule is also required for a mother to maintain her supply and production of breast milk as well as to relieve the painful physical pressure caused by the breasts' production of milk throughout the day.

25. If a woman who is away from her baby does not pump breast milk on a regular basis consistent with the baby's feeding schedule, she will experience discomfort, pain, and engorgement of the breasts, and will be at risk of developing blocked milk ducts and infection, a reduction of milk supply, and ultimately, a cessation of lactation.

26. While the schedule for pumping breast milk will vary from woman to woman based on a variety of factors, a new mother will typically need to pump every two to three hours that she is away from her baby for the first year of the baby's life.

27. Nursing women generally use a device called a breast pump to remove milk more efficiently.

28. Use of a device is commonly referred to as "pumping."

29. Ms. Torres was provided with a breast pump through her insurance and uses the breast pump to express milk while she is away from her child.

30. Comfort and relaxation are required for optimal production of breast milk during nursing or pumping.

31.  Stress, physical discomfort, and inability to relax can reduce or prevent the production of breast milk during nursing or pumping.

32.  When breast milk is pumped, the equipment and area used should be clean and sterile.

33.  After the breast milk is pumped, it should be stored in sterile containers, such as bags or bottles in refrigeration so that bacteria do not contaminate the infant's food supply.

### *Ms. Torres' Return To Work and*
### *Need to Express Breast Milk at Work After The Birth of Her Child*

34.  Assurant Solutions maintains and publishes an Employee Handbook online, which contains a Lactation Policy effective December 16, 2010 as follows:

> Assurant is committed to providing a work environment that is supporting of new mothers returning to work after the birth of a child. To support the needs of nursing employees and in accordance with state and federal laws, the Company will provide reasonable break time and pa private space for the purpose of expressing breast milk.  If possible, the time should run concurrently with existing break time.  See your Human Resources Representative for details.  Discrimination and/or harassment of nursing mothers in any form is unacceptable, and may subject the offender to disciplinary action.

35.  Upon Ms. Torres' return to work after her pregnancy and birth of her child, Defendant's management employee, Laurence Etchison, instructed Ms. Torres that she was only able to pump breast milk one time per day.

36. As a result of this limitation on the amount of times she could pump milk, Ms. Torres experienced breast engorgement, severe pain, and a decrease in her milk supply.

37. Mr. Etchison also informed her that her permanent place to pump milk would be in the Human Resources unisex restroom, informing her that she had to knock and wait to use the unisex restroom if someone was in there.

38. When Ms. Torres complained, Mr. Etchison told her that she was an inconvenience and there was no space available for her.

39. Additionally, Ms. Torres was required to clock out for time and did not get paid while she had to wait for a private room to nurse in.

40. Believing that her rights to pump milk at work were being violated, Ms. Torres obtained a copy of the Fair Labor Standards Act Nursing Mothers laws from the United States Department of Labor website.

41. Ms. Torres tried to respectfully provide her supervisor with a copy of the nursing mothers law and to communicate to him that she was not to use a restroom to pump milk, was to be given time to pump milk, and could pump milk when necessary.

42. In response, Mr. Etchison condescendingly stated that he is the "Senior Director of Human Resources" and that he was "well aware of the law" and did not need the Department of Labor legal information.

43. Subsequently, Ms. Torres was made to bring in a doctor's note to be able to pump milk twice per day.

44. Mr. Etchison set up the times that Ms. Torres would be permitted to express milk:  8 a.m. and 12:00 p.m.

45. This interfered with Ms. Torres' milk supply, particularly given that she had nursed her baby at home before reporting for her 7:00 a.m. shift and did not have adequate supply to pump by 8:00 a.m.

46. However, she believed that she could not complain for fear of losing her job and had to abide by the pumping hours dictated by Mr. Etchison.

47. Despite being aware of the nursing mothers' laws, Mr. Etchison did not ensure that Ms. Torres had privacy to express milk.

48. She was walked in on while pumping milk five or more times through locked doors.

49. This caused Ms. Torres to feel violated, humiliated, and stressed, resulting in a decrease in her milk supply and painful engorgement of her breasts.

50. On May 27, 2014, while Ms. Torres was pumping milk, someone entered room through a locked door, causing a violation of Ms. Torres' privacy.

51. Ms. Torres informed Lois Drew, Human Resources for Assurant Solutions.

52.   On Friday, May 30th, 2014, Laurence Etchison, male manager for Assurant

      Solutions, sent a mass email attaching a door sign with the subject line:

      "Associate Performing Lactation Door Placard."

53.   The email instructs:

      All:

      In order to best prevent inadvertent disturbances while our Associates are
      performing private lactation actions, Associates requesting private
      lacation [sic] areas will be provided with a door placard (please see
      attached) by Human Resources.  The Associate performing lactation
      actions will be responsible for placing the placard on the exterior door
      knob before closing and locking the door.  All others will be responsible
      for not attempting to unlock or open any door displaying the attached
      placard.

54.   The sign attached reads:

      **STOP**

      **DO NOT UNLOCK**

      **OR OPEN THIS DOOR**

      Lactation in

      Progress

55.   Ms. Torres received the May 30, 2014 email with the door sign attached and

      felt embarrassed, humiliated, offended, and that her privacy was being

      violated.

56.   On Sunday, June 1, 2014, Ms. Torres sent a written complaint to the

      Compliance and Ethics Department of Assurant Solutions.

57. The subject of her complaint read "Breastfeeding privacy/discrimination in York facility."

58. Defendant received Ms. Torres' June 1, 2014 written complaint.

59. On June 2, 2014, Lois Drew in the Human Resources Department of Assurant Solutions acknowledged Ms. Torres' complaint.

60. It was then discovered that the person entering the locked room while Ms. Torres was pumping milk was Mr. Etchison.

61. Later that day, Mr. Etchison walked by Ms. Torres' desk and tossed an envelope on her desk with new door signs that read:

> STOP – PRIVATE
>
> DO NOT UNLOCK
>
> DO NOT OPEN
>
> DO NOT KNOCK
>
> DO NOT DISTURB
>
> STOP - PRIVATE

62. Ms. Torres again complained that she felt harassed since she returned from maternity leave, that she had talked with her supervisor countless times, without success.

63. On June 10, 2014, Ms. Torres was not permitted to use her unpaid time off without penalty to attend a mandatory child support hearing.

64.   As a result, she was marked "absent" for attending the child support hearing and suspended her.

65.   Other Assurant Solutions' employees who did not pump milk at work, who were not pregnant, and who did not complain about discrimination, were permitted to use their unpaid time off without penalty to go to their court hearings.

66.   On June 16, 2014, Defendant gave Ms. Torres a performance improvement plan for "attendance."

67.   Defendant's termination of Ms. Torres' employment is a pretext for retaliation and discrimination.

68.   Indeed, at the time of her termination, according to the employer's KRONOS system, Ms. Torres had 40 hours of unpaid time off available.

69.   Defendant's maintain and distribute an Unpaid Time Off (UTO) policy to its employees, which provides in part as follows:

The Unpaid Time Off (UTO) policy underscores Assurant's commitment to recruiting, engaging, and retaining top talent by providing employees with greater flexibility in balancing professional and personal priorities. This policy provides regular full and part-time employees the option of taking up to one unpaid standard workweek of time per calendar year as a

supplement to time off provided for under the Paid Time Off (PTO) Policy…

70.   Thus, any absences Ms. Torres had for sick children, her sickness, and court hearings were permissible under the UTO policy, particularly given that she had 40 hours of UTO time accrued.

71.   Additionally, on April 1, 2014, to making a written complaint of retaliation and discrimination, Ms. Torres received a positive performance evaluation, indicating:

**Jane is meeting acceptable work performance, behavior and attendance.**

72.   The June 16, 2014 Performance Improvement Plan, issued *after* Ms. Torres complained and cites absences that occurred *before* the April 1, 2014 performance evaluation indicating her attendance was acceptable.

73.   Ms. Torres disagreed with the June 16, 2014 Performance Improvement Plan.

74.   Additionally, none of the listed "absences" were intentional or the fault of Ms. Torres; and the majority of the absences were for sickness of herself or her child, and a required court appearance on June 10, 2014.

75.   From June 25, 2014 to June 27, 2014, Ms. Torres was absent from work due to caring for her sick child.

76.   She presented her employer with a doctor's note for the absence.

77.   Ms. Torres returned to work.

78.   Upon Ms. Torres' return, on June 30, 2014, Assurant Solutions and its supervisor, Larry Etchison, suspended Ms. Torres pending a "termination decision."

79.   On July 3, 2014, Assurant Solutions fired Ms. Torres.

80.   Ms. Torres filed for unemployment compensation benefits and was found eligible for benefits given that she had "good cause" to be absent from work because of caring for her sick children.

81.   After being fired, Ms. Torres contacted the U.S. Department of Labor, Wage and Hour Division, to file a formal complaint for violations of the Fair Labor Standards Act, Nursing Mothers' Provision.

82.   The U.S. Department of Labor investigated Ms. Torres' complaint and found Assurant Solutions to have violated the Fair Labor Standards Act, Nursing Mothers' Provision.

83.   As a result of Defendant, Assurant Solution's retaliatory, hostile, and discriminatory actions against Ms. Torres because of her protected activity, need to express milk, family responsibilities, and conditions of her pregnancy, she has suffered greatly, including but not limited to, loss of her

employment, loss of her wages and benefits, and loss of her enjoyment of life.

## COUNT I

### *Retaliation*
### *in Violation of the Fair Labor Standards Act, Nursing Mothers' Provision, 29 U.S.C. §201 et seq.*

### *Against Defendant Assurant Solutions*

84. Paragraphs 1 through 83 are incorporated herein by reference as though set forth in full.

85. At all times relevant hereto, Plaintiff was a nonexempt "employee" of Assurant Solutions within the meaning of the FLSA.  29 U.S.C. § 203(e)(1).

86. At all times relevant hereto, Defendant Assurant Solutions is and was an "employer" and an "enterprise engaged in commerce or in the production of goods for commerce" under the FLSA.  29 U.S.C. § 203(d) and 29 U.S.C. § 203(s)(1).

87. As a nonexempt employee of Defendant Assurant Solutions, Plaintiff is and was covered by Section 7 of the FLSA and, therefore, entitled to break times to express breast milk pursuant to the Nursing Mothers Provision, 29 U.S.C. § 207(r).

88. Plaintiff engaged in a protected activity within the meantime of the FLSA when she sought adequate accommodations for expression of breast milk

pursuant to the Nursing Mothers Provision, and when she complained about the harassment she had experienced and about the company's failure to provide appropriate accommodations to pump breast milk.  29 U.S.C. § 207(r)(1), 215(a)(3).

89.    Ms. Torres' complaints regarding the harassment she had experienced and regarding the company's failure to provide her appropriate accommodations to pump breast milk put the company on notice that a complaint had been lodge.

90.    Defendant retaliated against Plaintiff for having engaged in the protected activity by issuing her write-ups, disciplinary action, and terminating her employment.

91.    Defendant's retaliatory actions were taken, effectuated by, and/or approved by persons in Assurant Solutions with actual knowledge of Ms. Torres' complaints and protected activity.

92.    Defendant's actions, including terminating Ms. Torres' employment, were adverse actions for purposes of 29 U.S.C. § 215(a)(3) because Defendant was aware that they would be detrimental to Plaintiff because of her status as a new mother with caregiving responsibilities for a child and a newborn, and as a nursing mother.

93.   Defendant's actions would have dissuaded, and did dissuade, a reasonable person in Ms. Torres' circumstances from asking for breaks to lactate and from filing a complaint.

94.   A casual connection exists between Ms. Torres' protected activities and the adverse employment actions.

95.   This includes the temporal proximity between Ms. Torres' written complaint to Defendant, a write-up, and her termination within weeks of her written complaint of discrimination, harassment, and retaliation because of expressing milk.

96.   Additionally, there exists escalating antagonism by the Defendant and its supervisory employees to Ms. Torres through her participation in the protected activity.

97.   Indeed, Plaintiff was in touch with Defendant on at least twenty separate occasions regarding her need for break time and an adequate location in which to pump breast milk in the weeks prior to Defendant's termination of her employment.

98.   As a result of the retaliation, harassment, and Defendant's ultimate termination of Ms. Torres' employment, Ms. Torres has suffered damages, including but not limited to, lost compensation and benefits, physical harm, including a depletion in her breast milk supply, mental anguish, including

stress, anxiety, sleeplessness, and fear of facing further harassment, and emotional distress caused by her inability to adequately meet her infant's nutritional and dietary needs, and actual costs of infant formula and medical costs.

99. Defendant engaged in the discriminatory conduct as fully set forth above and incorporated herein by reference with malice and/or intentional indifference to Ms. Torres' FLSA rights, thereby entitling her to liquidated damages.

100. The United States Department of Labor had made clear in its initial interpretation of the Nursing Mothers Provision of the Fair Labor Standards Act, 29 U.S.C. § 207(r), that if an employee has been "discharged or in any other manner discriminated against" for taking action to effectuate her breast pumping break time rights, "[she] may file a retaliation complaint with the Department or she may file a private cause of action seeking reinstatement, lost wages, and other appropriate remedies."

101. Plaintiff is, therefore, entitled to lost wages and other appropriate remedies for Defendant's retaliatory actions in violation of the law.   29 U.S.C. § 216(b).

102.    Plaintiff is seeking all remedies and damages permitted by law, including

pre-judgment and post-judgment interest, along with attorneys' fees and

costs.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, Jane Diluigi Torres, respectfully requests that

this Court enter judgment in her favor and against the Defendant, Assurant Services

Company Incorporated d/b/a Assurant Solutions, and direct the following relief:

1.    For a judgment declaring Defendant violated the Fair Labor Standards Act;

2.    For appropriate equitable relief, including but not limited to injunctive

remedies, including:

    a.    Assurant Solutions providing explicit notice to all its employees

regarding their rights under the Nursing Mothers Provision of the

Fair Labor Standards Act;

    b.    Assurant Solutions be ordered to designate a permanent, private,

sanitary location for pumping when an employee becomes a

nursing mother;

    c.    Assurant Solutions be ordered to train all its managers and human

resources personnel on the requirements of the Nursing Mothers

Provision and on prevention and appropriate response to

harassment;

     d.     Assurant Solutions be ordered to implement prompt reporting procedures to convey the results of any investigations conducted by it or other entities into employee complaints of retaliation.

3.    For a money judgment representing damages, including lost wages, future lost wages and front pay, liquidated damages, and all other sums of money, including retirement benefits and other employment benefits, together with interest thereon for the Defendant's willful violations of the Fair Labor Standards Act;

4.    For a money judgment representing prejudgment interest;

5.    For an Order directing Defendant to restore Ms. Torres to her position and make her whole;

6.    For an Order directing Defendant to retroactively promote Ms. Torres to her position with all attendant benefits and compensation;

7.    That the Court retain jurisdiction over this action until the Defendant have fully complied with the Orders of this Court and that the Court require Defendant to file such reports as may be necessary to supervise such compliance;

8.    For the costs of suit, including an award of reasonable attorneys' fees;

9.    Fine Defendant for its violations of the Fair Labor Standards Act;

10.   For such other and further relief as may be just and proper, including all relief afforded to victims of discrimination and retaliation under the Fair Labor Standards Act.

RESPECTFULLY SUBMITTED

THE PLAINTIFF,
JANE DILUIGI TORRES

BY AND THROUGH HER
ATTORNEYS

/s/ Lisa Matukaitis
_____
Lisa Matukaitis, Esq.
PA Bar ID: #202467
MATUKAITIS LAW LLC
104 STATE STREET
HARRISBURG, PA  17101
Ph. 717.412.7759
Fax 717.412.7764
lm@matlawllc.com
www.matlawllc.com

Dated:  April 23, 2015